## C. M. HAM *v.* C. CERNIGLIA ET AL.

1. CONDITIONAL SALE. *Features characterizing contract. Lease in form only.*

    Although a contract in writing may be in the form of a lease, it will be treated as a conditional sale of the personal property mentioned in it, when the instrument shows on its face the agreed value of the property and the right of the vendor to take possession of the same in default of payment, together with the monthly installments agreed to be paid, which are denominated rentals, but are in such amounts as would, if promptly paid, quickly equal the agreed value of the property.

2. SAME. *Patent ambiguity in instrument. Parol evidence to remove same. When admissible.*

    Parol evidence of the surrounding circumstances is admissible on behalf of the vendor to remove a patent ambiguity in contracts of conditional sale entered into from time to time with the same vendee in respect to the period at which the payments were to cease and as to the result that would follow payments equaling the full value of the property.

3. SAME. *Enlargement of transaction. Cotemporaneous agreement as to appropriation of payments. Parol evidence of same admissible. Replevin by vendor.*

    In replevin by the vendor, it is error to exclude parol evidence that, before the purchase of any of the articles mentioned in the several contracts of conditional sale, except those mentioned in the one first executed, he agreed, at the request of the vendee, to sell to her more extensively than had been previously contemplated, and that it was then further agreed between them that the payments made from time to time should be applied to the entire indebtedness, and not to any particular items. and that none of the property should be released or considered as paid for until her entire account with him was paid.

FROM the circuit court of Washington county.

HON. R. W. WILLIAMSON, Judge.

The furniture in controversy was attached by appellees for rent in arrears, in February, 1894. Ham, the appellant, replevied it as his. On the trial in the magistrate's court it was held that it belonged to May Lee, the tenant of appellees who occupied their house in which it was situated at the time of the levy. Ham appealed to the circuit court.

It appeared on the trial in the latter court that, in 1891, 1892 and 1893, Ham was a dealer in furniture, and had sold to May Lee numerous articles of furniture, of which those in controversy constituted but a small part. In each instance he took from her a contract partly written and partly printed, using the following printed form:

"C. M. Ham having this day rented to me the following property, to wit: ————, of the agreed value of ———— dollars and ———— cents, to be kept at my premises, No. ————, ———— street, and not to be removed therefrom without his consent, I agree to pay to him, for the use of said property by me, at said place, the rent of ———— dollars and ———— cents per week, payable on demand at the end of each week, the first week's rent of ———— dollars and ———— cents to be paid upon the delivery of said property to me; and, if I remove, or cause to be removed, the said property without his consent, or fail to pay said rent when due, I hereby agree to authorize the said C. M. Ham, his agents or attorneys, to enter my house, or any premises of which I may have control, in which said property may be found, and take away said property. And I also specially agree, in case any rent remaining due by me for said property has to be collected through an attorney, to pay a reasonable attorney's fee therefor, and that said delivery payment for the first week's rent shall be forfeited by me, to be applied towards the payment of said attorney's fee, and that the same shall be due and payable as if it had never been paid. Witness, ————."

These contracts were duly signed by May Lee; and inserted in the blank spaces are the premises on whith the furniture

was to be kept, the name of the purchaser, the agreed value of the articles, and the amount of rent to be paid weekly, which weekly rents are in such amount as would very speedily equal the agreed value, if paid as they fell due. The aggregate value of furniture mentioned in all of the contracts was $953.75. At the time of the levy, $484.50 had been paid in money, and the appellant having then taken back a part of the furniture, of the value of about $400, there remained due to him a balance of $69.25, which was considerably in excess of the value of that part of the furniture in controversy, as estimated by the jury. Most of the articles in suit were purchased in 1891, but the sales extended from May, 1891, to July, 1893. The purchase price of each lot of furniture, when sold, was charged by appellant upon his books to May Lee, and the sum thus charged was the exact value, in each instance, specified in the contract, and all payments made by her thereon were placed to the credit of her general account on appellant's books.

The appellant testified that when May Lee first began to buy from him—in fact, after the first bill of goods purchased—she desired to get more furniture than was at first contemplated; that he did not expect to sell her so much as she decided to get, but, before the sale of the property in suit and the execution of the contracts therefor, agreed to do so, and that it was then orally agreed between them that all money paid by her should be credited on her general account, and that none of the property should be released or considered as paid for until her entire account for all of the furniture that he might sell to her was paid.

This testimony was objected to by the appellees as being an attempt to add to the written contracts a stipulation not contained therein, and the objection was sustained, and the testimony excluded, the appellant being thus left without other evidence of title than the written contracts afforded. The appellant, in the course of his testimony, speaks of the contracts as "bills of sale," and of having "sold" what May Lee

"bought" of him; and this was also relied on by appellees as indicating an absolute sale, the matter in controversy being whether the transactions were to be so regarded, or were either conditional sales or leases, as the appellant contended, in the alternative. The court adopted the appellees' view that the transactions were absolute sales, and instructed the jury to find for them. From the judgment rendered on their verdict for appellees, under this instruction, the present appeal is prosecuted.

*Jayne & Watson*, for the appellant.

1. We think the lower court erred in not excluding the appellant's testimony tending to show that the title was retained in him, that being one of the main inducements to the sale. The written contracts did not show the entire transaction. *Ferguson* v. *Rafferty*, 6 Law. Rep. Ann., 1; Brown on Parol Evidence, 173; *Ib.*, rule 6; *Hervey* v. *R. I. Locomotive Works*, 93 U. S., 664; *Heryford* v. *Davis*, 102 U. S., 235; *Dedrick* v. *Wolfe*, 68 Miss., 500. He should also have been allowed to state the value of the property, the amount paid on it, and to state that the property was his.

2. The instruments should be construed as part of a transaction constituting a conditional sale. Such was the intention of the parties. *Hervey* v. *R. I. Locomotive Works*, *supra*. But if they are mere leases of personal property, or bailments, the trial judge was equally in error, for the right of property of the lessor is as well defined in such case as that of the vendor in a conditional sale after breach of condition by failure to pay the purchase money. Considering the instruments alone, without reference to the actual state of case shown by the excluded testimony, the contracts were leases. Viewed with reference to that testimony, the transaction in its entirety was a conditional sale.

3. The evidence shows that there is a balance due the appellant on all the sales in excess of the value of the property in

suit, and that, under the agreement made with her, he had the right to apply all payments made by her to her general account, which was done. The application having been made, the court will not disturb it, especially at the instance of a stranger to the transaction. 18 Am. & Eng. Enc. L., pp. 244, 246; *Hiller* v. *Levy*, 66 Miss., 30.

4. The appellees, as May Lee's landlords and owners of the dwelling in which the property was situated, have no claim for rent in arrear that displaces or subordinates appellant's right of property as vendor in a conditional sale after breach of condition. 6 Am. & Eng. Enc. L., pp. 424, 426 (note 5); *Duke* v. *Shackelford*, 56 Miss., 554; *Ketchum* v. *Brennan*, 53 *Ib.*, 596; *Paine* v. *Hall's Safe & Lock Co.*, 64 *Ib.*, 175; *Fields* v. *Williams*, 8 So. Rep., 808; 3 Am. & Eng. Enc. L., p. 437.

*Campbell & Starling*, for the appellees.

1. The testimony of the appellant, in so far as it tended to prove a reservation of title to the property in him, was properly excluded. The agreement with May Lee being prior to the written contracts, the subsequent contracts became the exclusive and only evidence of the terms of sale. No new term could be added to them by parol evidence.

2. In determining the character of the contracts in question, the court will look to the intent of the parties, and not the mere name they have applied to them. There is no express reservation of title in the vendor, and the contracts set forth the agreed value of the articles sold; they fix no time as a limit to the enjoyment of the property, and the price stated in each contract was charged as an indebtedness of May Lee upon appellant's books. The appellant himself produced the contracts, when asked by his counsel for the "bills of sale," and throughout his testimony refers to the furniture as having been "sold." The intention of the parties must be gathered from all the facts, and these show that the form of the instruments was a mere subterfuge, the transactions being in truth absolute sales.

*Dederick* v. *Wolfe*, 68 Miss., 500; *Heryford* v. *Davis*, 102 U. S., 235; 3 Am. & Eng. Enc. L., p. 426; 21 *Ib.*, p. 629, and notes; *Singer Mfg. Co.* v. *Cole*, 4 Lea, 439; *Lucas* v. *Campbell*, 88 Ill., 447.

3. Sections 2529 and 2530, code of 1892, provide that, ''if the tenant or other person liable for the rent have a limited interest in the property, the same may be distrained, and the interest therein of the tenant or person liable for the rent may be sold,'' and that ''when any person other than the tenant shall claim to be the owner of any property distrained, . . . he may make affidavit that said property is his, . . . and not held for the use of the tenant in any manner whatever.''

Even if the sale of the property was conditional, in that the title was not to pass to May Lee until all the purchase money was paid, it is by no means clear, in view of the case of *Tufts* v. *Stone*, 70 Miss., 54, and the equitable jurisdiction exercised by courts of law, under our constitution, that May Lee did not have such interest in the property as was liable to be distrained and sold, subject to appellant's rights. This view is strengthened by the clause requiring the claimant to make affidavit that the property is '' not held for the use of the claimant in any manner.'' The expression ''limited interest,'' in § 2529, and the word '' use,'' in § 2530, indicate that an equitable interest or right may be distrained and sold for rent.

Woods, J., delivered the opinion of the court.

If strict regard be had to the literal terms of the written contract, it would appear to be a lease; but, looking below the surface and through the mere form employed, we have no hesitation in declaring the contract one of conditional sale. The total value of the property is named in the face of the instrument, and the monthly rentals, as they are called. But these monthly installments, if paid promptly, would quickly equal the value of the property. The value of the property, the amount of the monthly installments, and the right of the vendor

to take possession of the goods on default in payment, are all seen on the face of the writing. But there is ambiguity on the face of the instrument as to the period of cessation of payments, and the result to follow payments equaling the full value of the property. Resort was properly had to parol evidence to show the surrounding circumstances in order to remove these patent ambiguities. Nor is objection made to this, as we understand the briefs of counsel and the record before us. But objection was made, and sustained by the court below, to the evidence of appellant, which proved, or tended to prove, that there was an understanding between the conditional vendor and vendee as to the manner and effect of the appropriation of the partial payments, the monthly installments. If the property, in whole or in large part, was of such nature as to render it liable to rapid deterioration in value by the wear and tear of daily use, there would be nothing unreasonable in the vendor's insisting with his vendee upon the retention of title in himself until the whole purchase price of the entire property had been paid. The excluded evidence was offered to show that there was an agreement of the parties, made after the sale of the first items of furniture, and when it became known to the vendor that the purchaser designed and desired to purchase more extensively than the seller originally believed was to be done, by which it was understood between the parties that the payments from time to time were to be entered as credits generally upon the entire account of the purchaser, and not upon any particular items in any particular purchase.

This evidence was admissible. It did not vary or alter the written agreement; its purpose was to show the whole contract of the parties, and to make clear what was ambiguous on the face of the writing. The case was one, on all the evidence, for a jury's determination. See the large number of cases cited in note 5, to paragraph 3, under title "Conditional Sales Disguised as Leases," 3 Am. & Eng. Enc. L., 426.

*Reversed.*